IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| H.E., by and through William and Jennifer Emerich, her adoptive parents and legal guardians as next friends, | | |
| **Plaintiff,** | | |
| v. | | **1:15-cv-3792-WSD** |
| KEITH HORTON, et al., | | |
| **Defendants.** | | |

## OPINION AND ORDER

This matter is before the Court on Defendants'[1] Motion to Dismiss Amended

Complaint [28] ("Motion to Dismiss").  Also before the Court is Plaintiff H.E.'s,

by and through William and Jennifer Emerich, her adoptive parents and legal

guardians as next friends, ("Plaintiff") Motion for Preliminary Injunction [34].

---

[1]     Keith Horton, Commissioner of the Georgia Department of Human Services, Bobby Cagle, Director of the Georgia Department of Children and Family services, Carol Christopher, Deputy Director of the Georgia Department of Family and Children Services, Adrian Owens, Social Service Administration, Fabienne Michel, Social Service Supervisor, Laverne Zephir, Social Service Supervisor, LeeGayle Harvill, Social Service Supervisor, Clyde Reese, III, Commissioner of the Georgia Department of Community Health, and Frank Berry, Commissioner of the Georgia Department of Behavioral Health and Development (collectively, "Defendants").

# I.   BACKGROUND

## A.   Facts

Plaintiff is a six-year old girl who suffers from certain psychiatric and emotional illnesses.  (Am. Compl. [25] ¶¶ 2, 21).  In April 2012, the juvenile court in Clayton County, Georgia placed Plaintiff and her two sisters into the care of Jennifer and William Emerich, after finding the placement was in the best interests of the children.  (Am. Compl. ¶ 22).  Plaintiff alleges that, at the time of their placement with the Emerich family, Plaintiff and her sisters were eligible for adoption assistance benefits under Title IV-E of Social Security Act.  (Am. Compl. ¶ 23).  A state medical card was issued to the Emerichs for the benefit of Plaintiff and her sisters.  The card entitled Plaintiff and her sisters to comprehensive physical and mental health care coverage.  (Am. Compl. ¶ 23).

Plaintiff alleges that Title IV-E adoption assistance and entitlement to Medicaid "go hand in hand."  (Am. Compl. ¶ 24).  According to Plaintiff, individuals who are eligible for Title IV-E adoption assistance are automatically in a group of Medicaid beneficiaries referred to as "mandatory categorically needy." (Am. Compl. ¶ 24).  In other words, according to Plaintiff, her receipt of Medicaid was automatic by virtue of her eligibility for Title IV-E adoption assistance. (Am. Compl. ¶ 24).

Plaintiff alleges that Georgia was, and continues to be, legally obligated to provide Plaintiff medically necessary psychiatric treatment, pursuant to the State's participation in the federal Medicaid program.  (Am. Compl. ¶ 25).  From April 2012 to December 2012, Plaintiff and her sisters received full medical care coverage.  In December 2012, "services were abruptly cancelled without notice." (Am. Compl. ¶ 26).

Plaintiff alleges that the Individual Capacity Defendants[2] ignored Ms. Emerich's requests for assistance "in correcting the improper categorization of [Plaintiff]'s Medicaid eligibility and in making available to [Plaintiff] all medically necessary health care treatment."  (Am. Compl. ¶ 28).  Plaintiff alleges she made each of the Individual Capacity Defendants aware of Plaintiff's severe illnesses, behavioral health challenges, and developmental disabilities.  (Am. Compl. ¶ 28).

Plaintiff alleges that, without appropriate medical care, Plaintiff's medical conditions grew worse.  She was hospitalized multiple times and required multiple surgeries to correct her worsening self-injurious behaviors.  (Am. Compl. ¶ 29). The Emerichs paid "out of pocket for some of the medically necessary services

---

[2]     The Individual Capacity Defendants are all Defendants except Clyde Reese and Frank Berry, who are sued in their official capacities.

Defendants were legally obligated to approve and make available to [Plaintiff]." (Am. Compl. ¶ 30).

Plaintiff alleges that, in July 2013, the Individual Capacity Defendants acknowledged the legal obligation to provide medically necessary care and treatment to Plaintiff, and that the prior failures to make these services available to Plaintiff were the result of mis-categorizing her Medicaid eligibility in December 2012. (Am. Compl. ¶ 31). In July 2013, the Individual Capacity Defendants or their agents issued a corrected, retroactive statement indicating Plaintiff had been Title IV-E eligible since April 2012, when she was placed with the Emerich family. (Am. Compl. ¶ 32).

Plaintiff alleges that she continued to be denied access to medically necessary care and treatment after the July 2013 correction. (Am. Compl. ¶ 33). In May 2014, the Individual Capacity Defendants corrected Plaintiff's erroneous Medicaid eligibility categorization. (Am. Compl. ¶ 34). Even after this correction, Plaintiff did not have access to medically necessary care and treatment. (Am. Compl. ¶¶ 34, 35).

Plaintiff alleges that the Medicaid Act, 42 U.S.C. § 1396 et seq., requires a participating State's medical plan to include mandatory Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") services for all Medicaid-eligible

children.  (Am. Compl. ¶ 38 (citing 42 U.S.C. § 1396a(a)).  The "catch-all"

provision, 42 U.S.C. § 1396d(r)(5), Plaintiff claims requires states to make

available placement in a Psychiatric Residential Treatment Facility ("PRTF") or

Residential Treatment Center ("RTC"), when such placement is medically

necessary for Medicaid-eligible children like Plaintiff.  (Am. Compl. ¶¶ 40-41).

Plaintiff alleges that Defendants failed to make PRTF or RTC services available to

Plaintiff, and, as a result, Defendants failed to provide Plaintiff with appropriate

EPSDT services, in violation of the Medicaid Act.  (See Am. Compl. ¶ 1).

Plaintiff brings her claims under 42 U.S.C. § 1983.  (Am. Compl. ¶ 1).

Plaintiff seeks a preliminary injunction ordering Defendants Reese and Berry (the

"Official Capacity Defendants") to approve Plaintiff's placement at an appropriate

PRTF or RTC.  (Am. Compl. ¶¶ 1, 43-46).  She seeks monetary damages against

the Individual Capacity Defendants, alleging they were not performing

discretionary functions when they violated federal law by denying medically

necessary services to Plaintiff, and that their conduct was malicious, intentional, or

recklessly or callously indifferent to Plaintiff's health, wellbeing and protected

rights.  (Am. Compl. ¶¶ 47-52).  Plaintiff also seeks attorneys fees under 42 U.S.C.

§ 1988.  (Am. Compl. ¶ 53).

B.   Procedural History

On October 29, 2015, Plaintiff filed her Complaint [1].  On December 9, 2015, Defendants filed their Motion to Dismiss Plaintiff's original complaint [10].  On December 15, 2015, Plaintiff filed her first Motion for Preliminary Injunction [13].  On January 15, 2016, Plaintiff filed her Motion for Leave to File an Amended Complaint, seeking to add Clyde Reese and Frank Berry, in their official capacities, as Defendants.  On May 10, 2016, the Court issued an order [24] granting Plaintiff's Motion for Leave to File an Amended Complaint and denying as moot Plaintiff's first Motion for Preliminary Injunction and Defendant's Motion to Dismiss Plaintiff's original complaint.

On May 24, 2016, Defendants filed their Motion to Dismiss Amended Complaint.  Defendants argue dismissal is required because:  (1) Plaintiff does not have an enforceable federal right under Section 1983, (2) the Official Capacity Defendants are immune from suit under the 11th Amendment, (3) the Individual Capacity Defendants are entitled to qualified immunity, and (4) the Amended Complaint fails to state a claim.

On August 1, 2016, Plaintiff filed her Motion for Preliminary Injunction.  In it, Plaintiff explains that her doctors have recommended that she be treated in a PRTF with specialists trained to work with children who suffer from Reactive

6

Attachment Disorder ("RAD").  Plaintiff asserts there are no PRTFs in Georgia

that are qualified to treat Plaintiff.  According to Plaintiff, the crux of the parties'

dispute is that Defendants refuse to approve Plaintiff's placement at an out-of-state

PRTF.  Plaintiff has located two appropriate facilities out of state:  one located in

Montana, and another in New Mexico.  Plaintiff seeks a preliminary injunction

hearing "where Plaintiff[] may submit evidence of an appropriate PRTF for

[Plaintiff]'s immediate placement."  ([34.1] at 5-6).

On August 24, 2016, Defendants filed their response [36].  Defendants

contend that the dispute is not ripe for adjudication, including because Defendants

"never had the opportunity to formally evaluate and rule upon any request to place

[Plaintiff] in an out-of-state PRTF, nor did [Plaintiff] submit another PRTF

application or contest the August 2015 PRTF determination that offered her . . . a

level-of-care equivalent."  ([36] at 12).

In Defendants' Surreply Brief [41],[3] Defendants contend that they are

currently determining whether all in-state and community resources have been

exhausted, as required by O.C.G.A. § 49-5-226, and, if so, what further actions—

including but not limited to a referral for out-of-state PRTF services—may be

---

[3]     On September 26, 2016, Defendants filed their Motion for Leave to File
Surreply Brief in Opposition to Motion for Preliminary Injunction [39].  On
October 18, 2016, the Court granted Defendants' Motion.  ([40]]).

taken with regard to Plaintiff.  Defendants thus maintain there is no concrete

dispute capable of court resolution, because there still has not been a final State

determination whether out-of-state treatment is warranted.

## II.   MOTION TO DISMISS

A.   Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court must "assume that the factual allegations in the

complaint are true and give the plaintiff[] the benefit of reasonable factual

inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir.

2010).  Although reasonable inferences are made in the plaintiff's favor,

"'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte

Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water

Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the

Court is not required to accept conclusory allegations and legal conclusions as true.

See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Mere "labels and conclusions" are insufficient.   Twombly, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550 U.S. at 570).

      B.    <u>Analysis</u>

           1.    <u>Whether Plaintiff Has Enforceable Federal Rights</u>

Section 1983 provides a private cause of action against any person who, under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983. Section 1983 provides a remedy for violations of rights secured by federal statutory as well as constitutional law.  Martes v. Chief Exec. Officer of S. Broward Hosp. Dist., 683 F.3d 1323, 1325 (11th Cir. 2012) (citing Maine v. Thiboutot, 448 U.S. 1, (1980)).  "[T]o seek redress through Section 1983, 'a plaintiff must assert the violation of a federal *right,* not merely a violation of

federal *law*.'" Id. (emphasis in original) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997)); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) ("[I]t is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under [Section 1983]."). Private rights of action to enforce federal statutes enacted under the Spending Clause are particularly disfavored. Martes, 683 F.3d at 1326 (citing Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 28 (1981) ("In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.")).

In Blessing, the Supreme Court set out a three-part test to determine whether Spending Clause legislation, such as the Medicaid Act, creates a right of action under Section 1983: (1) Congress must have intended that the statute in question benefit the plaintiff; (2) the asserted right must not be so "vague and amorphous" that its enforcement would strain judicial competence; and (3) the statute must clearly impose a mandatory obligation upon the states. Id. (citing Blessing, 520 U.S. at 340-41). In Gonzaga, the Supreme Court clarified and narrowed the first prong, holding that "anything short of an unambiguously conferred right" does not support an individual right of action under Section 1983. Id. (citing Gonzaga, 536

U.S. at 283-84 & n.3 ("Where a statute does not include this sort of explicit 'right—or duty-creating language,' we rarely impute to Congress an intent to create a private right of action.")).  If a federal statute's text and structure "provide some indication that Congress may have intended to create individual rights, and some indication it may not have, that means Congress has not spoken with the requisite 'clear voice.'  Ambiguity precludes enforceable rights."  31 Foster Children v. Bush, 329 F.3d 1255, 1270 (11th Cir. 2003) (quoting Gonzaga, 536 U.S. at 280).

In Arrington v. Helms, 438 F.3d 1336 (11th Cir. 2006), the Eleventh Circuit distilled the first Blessing prong, as modified by Gonzaga, to require that courts consider whether the provision in question:  (1) contains individually focused, rights-creating language; (2) has an individual, rather than systemwide or aggregate, focus; and (3) lacks an enforcement mechanism for aggrieved individuals.  Martes, 683 F.3d at 1326 (quoting Arrington, 438 F.3d at 1345).

The Medicaid Act provisions at issue here are 42 U.S.C. § 1396a(a)(43) and 42 U.S.C. § 1396d(r) (together, the "EPSDT Provisions").  Section 1396a(43) requires participating states to include in their Medicaid plan the provision of EPSDT services for Medicaid-eligible children "in all cases where [EPSDT

services] are requested."  42 U.S.C. § 1396a(43)(B).  Section 1396d(r) defines

EPSDT to include:

> Such other necessary health care, diagnostic services, treatment, and
> other measures described in subsection (a) of this section to correct or
> ameliorate defects and physical and mental illnesses and conditions
> discovered by the screening services, whether or not such services are
> covered under the State plan.

42 U.S.C. § 1396d(r)(5).

This Court previously considered whether the EPSDT Provisions create an

enforceable right under Section 1983.  In Hunter ex rel. Lynah v. Medows, the

Court found:

> The EPSDT provisions satisfy the three-factor test articulated in
> Golden State Transit[4] and modified in Blessing and Gonzaga.  First,
> the EPSDT provisions are intended to benefit Hunter, who is eligible
> for the screening and treatment services described in the statute.  See
> Kenny A. v. Perdue, 218 F.R.D. 277, 293-94 (N.D. Ga. 2003) (finding
> that EPSDT statutory provisions are clearly intended to benefit
> children under the age of 21).  Unlike the statutory language in
> Blessing and Gonzaga, the EPSDT provisions mandate the provision
> of screening and treatment services "in all cases where they are
> requested."  42 U.S.C. § 1396a(a)(43)(B) (emphasis added).  Second,
> the EPSDT provisions create a binding obligation on the state.  As
> recognized by the United States Court of Appeals for the Eleventh
> Circuit, "The language of § 1396d(r)(5) *expressly requires* Medicaid
> participating states to provide necessary treatment to correct or
> ameliorate defects and physical illnesses and conditions discovered by
> the screening services, whether or not such services are covered under

---

4       Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106
(1989).

> the State plan." Pittman v. Sec'y, Fla. Dep't of Health and Rehab.
> Servs., 998 F.2d 887, 891-892 (11th Cir. 1993) (emphasis added).
> Finally, the interest created by the EPSDT provisions is sufficiently
> specific as to be judicially enforceable. See Kenny A., 218 F.R.D. at
> 294. The provisions' mandate is clearly defined in 42 U.S.C.
> § 1396d(r), which describes in detail the required screening and
> treatment services.

No. 1:08-cv-2930-TWT, 2009 WL 5062451, at *2 (N.D. Ga. Dec. 16, 2009).

Other courts that have considered the EPSDT Provisions and similarly

worded Medicaid Act provisions have uniformly found the provisions are

enforceable under Section 1983. See, e.g., S.D. ex rel. Dickson v. Hood, 391 F.3d

581, 602-606 (5th Cir. 2004) (EPSDT provision, 42 U.S.C. § 1396a(a)(10)(A),

satisfies all of the Blessing factors post Gonzaga); Westside Mothers v. Haveman,

289 F.3d 852, 863 (6th Cir. 2002) (Medicaid-eligible children are the intended

beneficiaries of EPSDT; the services must be provided to them; and the provisions

are not too vague or amorphous, as they are listed in the statute); Pediatric

Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 478-79 (8th Cir.

2002) (recipients had federal right to EPSDT services, enforceable through

Section 1983); Cruz v. Zucker, 116 F. Supp. 3d 334, 346 (S.D.N.Y. 2015) ("As

numerous courts have held, the EPSDT Requirement (1) is unmistakably focused

on the rights of Medicaid-eligible youth to receive the enumerated services,

(2) provides detailed, objective, and manageable standards, including specific

services that must be provided, and (3) is binding on states."); <u>N.B. v. Hamos</u>, No. 11 C 06866, 2013 WL 6354152, at *5 (N.D. Ill. Dec. 5, 2013) (holding that the EPSDT Requirements create a federal right enforceable under Section 1983); <u>Salazar v. District of Columbia</u>, 729 F. Supp. 2d 257, 269 (D.D.C. 2010) (same); <u>see also</u> <u>Hunter</u>, 2009 WL 5062451, at *2 (noting that a majority of Circuits have found an enforceable Section 1983 right in Section 1396a(a)(10), a similarly worded Medicaid provision).

Defendants do not provide—and the Court is unable to find—any authority to support that the EPSDT Provisions does *not* create rights enforceable under Section 1983.  Defendants suggest that the Supreme Court's recent decision in <u>Armstrong v. Exceptional Child Ctr. Inc.</u>, 135 S. Ct. 1378 (2015) forecloses Plaintiff's Section 1983 claims.  The Court disagrees.

In <u>Armstrong</u>, Medicaid providers brought an action against the state agency responsible for Idaho's Medicaid program.  The providers challenged the agency's failure to amend existing Medicaid reimbursement rates.  The providers sought to enforce 42 U.S.C. § 1396a(a)(30)(A), the section of the Medicaid Act that pertains to reimbursement for Medicaid service providers.  The providers brought their action under the Supremacy Clause of the United States Constitution.  <u>Id.</u> at 1383. The district court found the providers had an implied right of action, under the

14

Supremacy Clause, to seek injunctive relief.  The Ninth Circuit Court of Appeals affirmed.  The United States Supreme Court reversed, finding that the Supremacy Clause is not the source of any federal rights and holding that it "certainly does not create a cause of action."  Id.

In Part IV of its decision, the Court considered whether the providers had a cause of action arising from the Medicaid Act itself.  Part IV was not joined by a majority of the Court, and is a plurality opinion.  The Court found providers do not have a private right of action under Section 1396a(a)(30)(A) of the Medicaid Act, because the section lacks "the sort of rights-creating language needed to imply a private right of action."  Id. at 1387.

Part IV—the part relevant here—does not have binding or persuasive effect. As an initial matter, Part IV was a plurality opinion.  "Thus, as several district courts have now recognized, its analysis 'is not part of the majority decision and is therefore not binding.'"  O.B. v. Norwood, 170 F. Supp. 3d 1186, 1191 (N.D. Ill. 2016) (citing cases).  As a result, Blessing and Gonzaga have binding effect, were not impacted by Armstrong Part IV, and the pre-Armstrong cases discussed above still apply.  See Planned Parenthood Gulf Coast v. Kliebert, 141 F. Supp. 3d 604, 637-38 (M.D. La. 2015) (citing cases).  "But as important . . . Armstrong is also inapposite here, because it addresses a different statutory provision, asserted by

different plaintiffs, under a different theory."  Norwood, 170 F. Supp. 3d at

1191-92.  First, Plaintiff here is a Medicaid beneficiary allegedly entitled to

EPSDT services, rather than the Medicaid providers in Armstrong.  In Part IV, the

Armstrong plurality emphasized this difference:  "We doubt, to begin with, that

providers are intended beneficiaries (as opposed to mere incidental beneficiaries)

of the Medicaid agreement, which was concluded for the benefit of the infirm

whom the providers were to serve, rather than for the benefit of the providers

themselves."  Armstrong, 135 S. Ct. at 1387.  Second, Plaintiff's action here relies

on Section 1983 rather than the Supremacy Clause upon which the providers relied

in Armstrong.  Third, Plaintiff asserts an individual right to services under the

EPSDT Provisions, whereas the Armstrong providers asserted a right for increased

provider reimbursement rates based on a federal agency directive in 42 U.S.C.

§ 1396a(a)(30).  See id. at 1192 (quoting J.E. v. Wong, 125 F. Supp. 3d 1099, 1107

(D. Haw. 2016)).  Unlike Section 1396a(a)(30), the EPSDT Provisions contain

rights-creating language.

Given these important differences, every court that has considered the

EPSDT Provisions after Armstrong found the provisions create an enforceable

Section 1983 right.  See id.; Wong, 125 F. Supp. 3d at 1107; cf. Unan v. Lyon, No.

2:14-cv-13470, 2016 WL 107193, at *11 (E.D. Mich. Jan. 11, 2016) ("The

discussion in <u>Armstrong</u> regarding the private enforcement of Medicaid provisions is therefore not binding and is inapposite to the present action.").  The Court finds the EPSDT Provisions create an enforceable Section 1983 right.

2.    <u>Eleventh Amendment Immunity</u>

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent."  <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citations omitted).  "As such, it is no different from a suit against the State itself," <u>id.</u>, which fails because of Eleventh Amendment immunity.  <u>See, e.g.</u>, <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1301 (11th Cir. 2007) ("Under most circumstances, the Eleventh Amendment bars suits against states and state entities by their citizens.").  In <u>Ex Parte Young</u>, 209 U.S. 123 (1908), the Supreme Court carved out a narrow exception to the States' sovereign immunity, holding that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law.  <u>Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 633 F.3d 1297, 1308 (11th Cir. 2011).

Defendants concede that Plaintiff here seeks prospective injunctive relief against the Official Capacity Defendants.  Defendants contend, however, that Ex Parte Young does not apply where "prospective equitable relief would implicate the state's treasury."  ([28.1] at 11-12).  In support of their argument, Defendants rely on DeKalb Cty. Sch. Dist. v. Schrenko, 109 F.3d 680 (11th Cir. 1997).  In Schrenko, the DeKalb County School District sought injunctive relief to require the State to help fund the school district's future transportation expenses.  The school district contended that the State's system of calculating reimbursable transportation expenses was inconsistent with state law.  The district court agreed, and ordered the State to pay the School District past monies due and enjoined it from miscalculating transportation funding in the future.  The Eleventh Circuit reversed.  It explained that the Ex Parte Young exception "permits federal courts to enjoin state officials to conform their conduct to the requirements of federal law, even if there is an ancillary impact on the state treasury."  Id. at 690 (citing Milliken v. Bradley, 433 U.S. 267, 289 (1977)).  "When, however, 'the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its Eleventh Amendment immunity from suit even though individual officials are nominal defendants.'"  Id. (alterations omitted) (quoting Ford Motor Co. v. Dep't of Treasury of Ind., 323

18

U.S. 459, 464 (1945)).  Applying these principles, the Eleventh Circuit found that the Ex Parte Young exception did not apply, because "[t]he only action the defendants are required to take to comply with the district court's injunction is to pay from the state treasury the additional funds specified by the district court."  Id.

More recently, in Seminole Tribe of Fla. v. Fla. Dep't of Revenue, 750 F.3d 1238 (11th Cir. 2014), the Eleventh Circuit considered whether Ex Parte Young applied where a tribe sought a declaratory judgment that it is exempt, under various provisions of the Constitution, from paying Florida's fuel tax.  The tribe sought an injunction requiring a refund of taxes paid.  The Eleventh Circuit found the State was the "real, substantial party in interest" because the suit was in essence "a suit for monetary relief to be financed by the Florida fisc [sic]."  Id. at 1244. The Court reasoned that the "relief that the Tribe seeks is equitable in name only[,]" because, due to the structure of Florida's tax laws, a "declaratory ruling that the Tribe is exempt from the tax would amount to a judgment that the Tribe is entitled to a refund under Florida law."  Id. (citing Fla. Stat. § 206.41(4), (5)).  The Court noted the refund would amount to a money judgment against Florida.  Id. The Court also noted that, even if the relief sought "could conceivably be described as prospective in nature[,]" the relief is nothing "other than an award of damages."  Id.

19

Schrenko and Seminole are distinguishable.  Neither decision addressed an injunction involving the Medicaid Act.  Indeed, in Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health and Human Servs., 225 F.3d 1208 (1th Cir. 2000), the Eleventh Circuit declined to decide whether the Eleventh Amendment bars a court from ordering a State official to comply with the Medicaid Act's reimbursement provisions.  Id. at 1226-27.  Other courts have found that the Eleventh Amendment does not prevent Medicaid beneficiaries from seeking prospective injunctive relief against state officials in federal court.  See, e.g., Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 237 (1st Cir. 2002) (Eleventh Amendment did not prevent plaintiffs' claims that the State violated the EPSDT mandates of the Medicaid Act by failing to provide intensive home-based mental health services).  In reaching this conclusion, courts have noted that a State's participation in Medicaid is voluntary and funded, in part, by the federal government.  Under these circumstances, "[a] state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of Ex Parte Young."  J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1287 (10th Cir. 1999); see also Antrican v. Odom, 290 F.3d 178, 189-90 (4th Cir. 2002) ("This case . . . does not present a special sovereignty interest that would allow North Carolina to use its sovereign

immunity shield to avoid an otherwise proper <u>Ex Parte Young</u> action.  Rather, it

involves a federally designed healthcare program in which the federal government

has invited the States to participate if they agree to certain federally established

conditions[,] . . . [and by electing to participate, States] face[] the risk of being

ordered by a federal court to correct the problems in its system."); <u>Missouri Child</u>

<u>Care Ass'n v. Cross</u>, 294 F.3d 1034, 1036 (8th Cir. 2002) ("[O]nce a state agrees

to take the funds offered through [a federal program created pursuant to the

Spending Clause], the state is bound to 'comply with federally imposed

conditions.'"  (quoting <u>Pennhurst State Sch. and Hosp. v. Halderman</u>, 451 U.S. 1

(1981))).

The type of relief at issue in <u>Seminole</u> and <u>Schrenko</u> also is not the type of

relief Plaintiff seeks here.  In <u>Seminole</u>, the Eleventh Circuit found that the tribe

effectively sought retrospective, rather than prospective, relief, and the relief

sought was nothing more than a money damage award.  Similarly, in <u>Schrenko</u>, the

Eleventh Circuit found money damages were the only relief sought, because "[t]he

only action the defendants are required to take . . . is to pay from the state treasury

the additional funds . . . ."  <u>Schrenko</u>, 109 F.3d at 690.  Here, Plaintiff seeks

prospective relief requiring Defendants to approve Plaintiff's placement at an

appropriate PRTF or RTC.[5]  While this relief will likely impact the State treasury, this impact is "ancillary" to the relief sought.  See Fla. Ass'n of Rehab., 225 F.3d at 1227 (contemplating that prospective relief implicating the state treasury may be available "if such payments will be nothing more than ancillary to compliance with an enforceable prospective injunction . . . .").[6]

Guggenberger v. Minnesota, ––– F. 3d ––––, 2016 WL 4098562 (D. Minn.) is instructive.  In Guggenberger, plaintiffs sought an injunction requiring State officials to fund and provide certain Medicaid services to which plaintiffs alleged they were entitled.  The court noted that, "[a]lthough the relief Plaintiffs seek relates to and will likely involve the expenditure of funds, it is not the type of retroactive monetary relief barred by the Eleventh Amendment."  Id. at *12.  "Rather, Plaintiffs seek 'relief that serves directly to bring an end to a present violation of federal law' which is ongoing and causing Plaintiffs continuing harms."  Id. (quoting Papasan v. Allain, 478 U.S. 265, 278 (1986)).  The court found the relief sought was different from those cases where plaintiffs "requested to be made whole through financial compensation for the past months or years in

---

[5]     To the extent Plaintiff seeks damages against the Official Capacity Defendants for alleged past violations, Plaintiff's claims are barred by the Eleventh Amendment, and are dismissed.

[6]     It is possible that placement at an out-of-state PRTF or RTC will cost less than an in-state placement.

which they were" denied services, noting that "such relief would be barred by the Eleventh Amendment." Id. The court concluded that it "may properly award prospective injunctive relief to remedy Plaintiffs' harms. Any impact on the State treasury will be ancillary to such relief and is therefore permissible under the Eleventh Amendment." Id. (citing Mo. Child Care Ass'n, 294 F.3d at 1042); see also D.T.M. ex rel. McCartney v. Cansler, 382 F. App'x 334 (4th Cir. 2010) (request for reinstatement of Medicaid benefits falls under Ex Parte Young exception to Eleventh Amendment immunity). The reasoning in Guggenberger is sound. The Court finds Plaintiff's claims against the Official Capacity Defendants fall under the Ex Parte Young exception, and are not barred by the Eleventh Amendment.[7]

> 3.  Qualified Immunity

Defendants next argue that the Individual Capacity Defendants are entitled to qualified immunity. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[7]     The Eleventh Amendment also does not bar Plaintiff's attorneys' fees claim, because attorneys' fees under 42 U.S.C. § 1988 are allowed for a party who is successful in obtaining injunctive relief under 42 U.S.C. § 1983 against a state officer acting in his official capacity. Hutto v. Finney, 437 U.S. 678 (1978); Pulliam v. Allen, 466 U.S. 522 (1984).

which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish that "the [state official]'s conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." City of W. Palm Beach, 561 F.3d at 1291. This two-step analysis may be done in whatever order is deemed most appropriate for the case. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

The parties' arguments center on whether Plaintiff has alleged a violation of a clearly established constitutional right. A right is clearly established where "a reasonable official would understand that what he is doing violates that right." Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (quoting Bashir v. Rockdale Cty., 445 F.3d 1323, 1327 (11th Cir. 2006)). Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law. Id. (citing Bashir, 445 F.3d at 1330-31)). The inquiry "must be undertaken in light of the specific context of the case, not as

a broad general proposition." Id. (internal quotation marks omitted) (quoting

Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).  In the Eleventh Circuit, a court

may "look only to binding precedent—cases from the United States Supreme

Court, the Eleventh Circuit, and the highest court of the state under which the

claim arose—to determine whether the right in question was clearly established at

the time of the violation." Id. (citing Amnesty Int'l, USA v. Battle, 559 F.3d 1170,

1184 (11th Cir. 2009)).

Plaintiff states she was "unable to locate any reported decision in the

Eleventh Circuit where a court analyzed whether qualified immunity applied to a

Section 1983 claim for violation of the EPSDT provisions in the Medicaid Act."

([30] at 20).  Plaintiff relies on Vinyard v. Wilson, 311 F.3d 1340 (11th Cir. 2002)

to argue that the "clearly establish right" prong can be satisfied based on the clear

language of the EPSDT Provisions themselves.  In Vinyard, the Eleventh Circuit

noted that "the words of the pertinent federal statute or federal constitutional

provision in some cases will be specific enough to establish clearly the law

applicable to particular conduct and circumstances and to overcome qualified

immunity, even in the *total absence of case law*." Id. at 1350 (emphasis in

original).  In determining whether statutory language is specific enough to

overcome qualified immunity, a court must "ask whether the law was sufficiently

established to have provided fair warning to Defendants that they were violating

the law." Collier v. Dickinson, 477 F.3d 1306, 1311 (11th Cir. 2007) (citing

Hope v. Pelzer, 536 U.S. 730, 731 (2002); Brosseau, 543 U.S. 194, 198-99 (2004)).

"This inquiry involves evaluating whether a reasonably competent public official

would have known that his actions were prohibited by the law at the time he

engaged in the conduct in question. . . .  The standard is one of objective

reasonableness." Id. (citation omitted).

The Eleventh Circuit has not considered this principle in evaluating

provisions of the Medicaid Act.[8]  In Gonzalez v. Lee Cty. Hous. Auth., 161 F.3d

---

[8]      Plaintiff argues that other courts have found sections of the Medicaid Act
"clearly established" based on the clear language of the sections.  The cases upon
which Plaintiff relies do not support Plaintiff's argument, and are not persuasive
here.  In Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 443 F.3d
1005 (8th Cir. 2006), vacated on other grounds, 551 U.S. 1142 (2007), the Eighth
Circuit found defendants were not entitled to qualified immunity where they failed
to approve medical care under Sections 1396a(a)(30)(A) and 1396d(a)(13) of the
Medicaid Act.  In determining whether rights under these Medicaid sections were
"clearly established," the Eighth Circuit relied on its prior holdings in which it
"specifically held that each of these subsections created enforceable federal rights."
Id. at 1014.  As discussed above, while many courts, including this Court, have
found the EPSDT Provisions create enforceable federal rights, the Eleventh Circuit
has not done so.  Pediatric Specialty Care does not apply here.
        The other case Plaintiff relies on is Thrower v. Pennsylvania, 783 F. Supp.
2d 651 (W.D. Penn. 2012).  In Thrower, the court found Sections 1396a(a)(31) and
1396d(d) of the Medicaid Act create enforceable rights under Section 1983.
Turning to the qualified immunity analysis, the court, with little explanation, found
the rights were clearly established, reasoning that "Defendants do not suggest that

1290 (11th Cir. 1998), the Eleventh Circuit considered whether 42 U.S.C. § 3617, a provision of the Fair Housing Act, standing alone, provided fair warning to overcome qualified immunity.  Section 3617 makes it unlawful to "interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  Section 3604 bars racial discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith . . . ." 42 U.S.C. § 3604(b).  The Eleventh Circuit held:

> Section 3617, read in conjunction with section 3604, therefore, straightforwardly states the unsurprising (and presumably uncontroversial) proposition that the Fair Housing Act prohibits "interfering" with any person because she "aided or encouraged" another person's exercise of her right to rent property free from racial discrimination.  Any reasonable public official, having read the plain terms of this statute, certainly would have understood that federal law makes it unlawful to terminate an employee for refusing to discriminate against potential tenants on the basis of race.  To the extent any federal statute, standing alone, can provide a potential defendant with concrete notice, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what she is doing

---

the obligations imposed on facilities governed by the Medicaid Act were not in effect on . . . the date Decedent died as a result of the deficient care provided by the Individual Defendants."  Id. at 657-58.  It is unclear on what basis the court found the rights clearly established.  The Court does not find Thrower persuasive.

violates federal law, we believe that section 3617 provides such notice
*in the circumstances of this case*.

Gonzalez, 161 F.3d at 1302 (internal quotation marks, citations, alterations, and

footnotes omitted) (emphasis in original).

In Collier, the Eleventh Circuit considered whether certain provisions of the

Driver Privacy Protection Act ("DDPA"), 18 U.S.C. §§ 2721-2725, were

sufficiently clear to put defendants on notice that their actions violate federal law.

The statute at issue provided:

> A person who knowingly obtains, discloses or uses personal
> information, from a motor vehicle record, for a purpose not permitted
> under this chapter shall be liable to the individual to whom the
> information pertains, who may bring a civil action in a United States
> district court.

18 U.S.C. § 2724(a).  The Court found that "the plain language of the statute and

the case law [interpreting it] gave clear notice to Defendants that releasing the

information in question violated federal law."  Collier, 477 F.3d at 1312.

Here, the EPSDT provisions require that a "State plan for medical assistance

must . . . provide for" the following:

> (A) informing all persons in the State who are under the age of 21 and
> who have been determined to be eligible for medical assistance
> including services described in section 1396d(a)(4)(B) of this title, of
> the availability of early and periodic screening, diagnostic, and
> treatment services as described in section 1396d(r) of this title and the
> need for age-appropriate immunizations against vaccine-preventable
> diseases,

28

> (B) providing or arranging for the provision of such screening services in all cases where they are requested . . . .

42 U.S.C. § 1396a(a)(43).  "The catch-all EPSDT provision in Sec. 1396d(r)(5) . . . mandates that participating states provide to Medicaid-eligible minors '[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [§ 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.'"  Garrido v. Dudek, 731 F.3d 1152, 1154 (11th Cir. 2013) (quoting 42 U.S.C. § 1396d(r)(5)).

The language of the EPSDT Provisions is unlike the language considered in Gonzalez and Collier.  The statutes at issue in Gonzalez and Collier explicitly prohibit individuals from engaging in certain specific conduct, and define such conduct as unlawful or giving rise to liability.  See 18 U.S.C. § 2724(a) ("A person who knowingly obtains, discloses or uses personal information . . . shall be liable . . . ."); 42 U.S.C. § 2617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person . . . .").  The EPSDT Provisions do not prohibit "unlawful" conduct, and the provisions direct State—not individual—

action.[9]  The EPSDT Provisions, unlike the Gonzalez and Collier statutes, lack

sufficiently precise language to forecast that a State official's individual conduct in

denying claimed Medicaid benefits could be a violation of federal law.  The Court

finds that the EPSDT Provisions, in the context of this case, lack the requisite

"concrete notice" that would "truly compel (not just suggest or allow or raise a

question about), the conclusion for every like-situated, reasonable government

agent that what she is doing violates federal law[.]"  Gonzalez, 161 F.3d at 1302.

The Individual Capacity Defendants thus are entitled to qualified immunity, and

Plaintiff's claims against them are dismissed.

### 4.   Failure to State a Claim

Defendants next argue that Plaintiff's Amended Complaint fails to state a

claim upon which relief can be granted.  Defendants argue Plaintiff fails to allege

deliberate indifference, personal involvement, and supervisory liability.  They also

contend Plaintiff does not state a claim for punitive damages or injunctive relief.

---

[9]     Section 1396d(r)(5) sets forth general, not specific requirements.  It provides
that EPSDT includes "[s]uch other necessary health care, diagnostic services,
treatment, and other measures . . . to correct or ameliorate defects and physical and
mental illnesses and conditions discovered by the screening services, whether or
not such services are covered under the State plan."  42 U.S.C. § 1396d(r)(5).  This
is not the type of concrete notice Collier requires.

a)      Deliberate Indifference

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that she was (1) deprived of a right (2) secured by the Constitution or laws of the United States, and (3) that the alleged deprivation was committed by a person under color of state law.  See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999); Rayburn v. Hogue, 241 F.3d 1341, 1348 (11th Cir. 2001).

Defendants argue that liability under Section 1983 requires a showing of conduct greater than mere negligence; rather, a plaintiff must allege that a defendant was deliberately indifferent to her protected rights.  To support this argument, Defendants rely on A.P. v. Feaver, 293 F. App'x 635 (11th Cir. 2008).  As the Eleventh Circuit stated in A.P., the deliberate indifference standard applies in certain circumstances when considering a "violation of a federal constitutional or statutory right in a § 1983 suit for damages against a government official in his or her individual capacity."  293 F. App'x at 651.  By contrast, in a Section 1983 suit seeking injunctive relief, "it does not matter who specifically violated the rights of the plaintiffs, merely that the plaintiffs are suffering an ongoing violation of their rights and the defendants before the court have the authority to stop it from occurring."  Id. at 650-51.  The Individual Capacity Defendants having been dismissed, the Court is not required to consider whether Plaintiff adequately

alleges deliberate indifference.  Because Plaintiff is not required to allege that the Official Capacity Defendants were deliberately indifferent, Defendants' Motion to Dismiss Plaintiff's Section 1983 claim asserted against the Official Capacity Defendants is denied.

b)   <u>Personal Involvement</u>

Defendants next argue that Plaintiff fails to allege that any of the Defendants were personally involved in the actions alleged in the Amended Complaint.  To prevail in a Section 1983 action against a defendant in his individual capacity, a plaintiff generally must show that the defendant was personally involved in acts or omissions that resulted in the constitutional deprivation.  <u>Hale v. Tallapoosa Cty.</u>, 50 F.3d 1579, 1582 (11th Cir. 1995).  To hold a defendant liable under Section 1983 in his official capacity, the plaintiff must show that the deprivation of a constitutional right resulted from:  "(1) an action taken or policy made by an official responsible for making final policy in that area of the [State's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker."  <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1343 (11th Cir.1994).  The Official Capacity Defendants are the only remaining defendants in this action.  Plaintiff is not required to allege their

personal involvement, and Defendants' Motion to Dismiss the Official Capacity
Defendants is denied.

### c)   Supervisory Liability

Defendants next argue Plaintiff fails to state a claim for supervisory
liability with respect to Defendants Horton, Cagle, and Christopher.  Because these
Individual Capacity Defendants are dismissed, Defendants' Motion to Dismiss is
denied on this ground.

### d)   Punitive Damages

Defendants next argue that Plaintiff fails to state a claim for punitive
damages under Section 1983.  Punitive damages in Section 1983 suits are available
only when an official is sued in his individual capacity.  See City of Newport
v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (municipalities are immune from
punitive damages claims); see also Colvin v. McDougall, 62 F.3d 1216, 1219 (11th
Cir. 1995) (sheriff acting in his official capacity could not be subject to punitive
damages).  The Individual Capacity Defendants having been dismissed,
Defendants' Motion to Dismiss is granted on Plaintiff's punitive damage claim.

e)      Injunctive Relief

Defendants next argue that Plaintiff's request for injunctive relief is too vague and thus fails as a matter of law.  Rule 65(d) of the Federal Rules of Civil Procedure requires:

> (1) *Contents.*  Every order granting an injunction and every restraining order must:
>
> (A) state the reasons why it issued;
>
> (B) state its terms specifically; and
>
> (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

Fed. R. Civ. P. 65(d).  Plaintiff requests an injunction requiring "placement in an appropriate PRTF or RTC."  (Am. Compl. ¶ 45).  Defendants argue the term "appropriate" is broad, vague, and undefined.

Plaintiff asserts that Defendants' argument is premature, because Plaintiff "will be moving for a preliminary injunction based on the medical evidence of what is necessary to treat [Plaintiff]'s complex and worsening medical conditions." ([29] at 17).  Plaintiff has now filed her Motion for Preliminary Injunction requesting specific relief, and the Court finds the Motion to Dismiss on the grounds of vagueness is moot.  The Court addresses the specificity of the requested relief in Section III below.

34

## III.   MOTION FOR PRELIMINARY INJUNCTION

### A.   Legal Standard

A plaintiff seeking a preliminary injunction must establish:  (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly carries the burden of persuasion as to the four prerequisites.  The burden of persuasion in all of the four requirements is at all times upon the plaintiff."  Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (internal quotation marks omitted) (quoting United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983)); see Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc., 188 F. Supp. 2d 1350, 1357 (S.D. Fla. 2002) ("Courts in this Circuit will not issue a preliminary injunction where the moving party fails to meet its burden of proof on each of the four factors.").

### B.   Analysis

The parties primarily dispute whether Plaintiff's Preliminary Injunction Motion is ripe.  "[T]he ripeness inquiry conflates with the preliminary injunction

inquiry, for if the plaintiffs' challenge is premature, *a fortiori* there is no irreparable injury."  Time Warner Entm't Co. L.P. v. F.C.C., 810 F. Supp. 1302, 1304 n.5 (D.D.C. 1992).  The Court first addresses the issue of ripeness, then the requirements for a preliminary injunction.

      1.   Ripeness

Defendants argue that the Court lacks jurisdiction over this matter because Plaintiff's claims are not justiciable.  Article III of the United States Constitution provides that the judicial power of the federal courts extends only to "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  It is well-settled that this limited extension of power imposes substantive constitutional constraints on the power of federal courts to resolve legal disputes.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The three "strands of justiciability" that "go to the heart of the Article III case or controversy requirement" are standing, ripeness, and mootness.  Harrell v. Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010).  Defendants argue that Plaintiff's claims are not ripe.

Ripeness asks "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court."  Socialist Workers Party v. Leahy, 145 F.3d 1240,

1244 (11th Cir. 1998) (quoting Digital Props., Inc. v. City of Plantation, 121 F.3d

586, 589 (11th Cir. 1997)).  The ripeness doctrine keeps federal courts from

deciding cases prematurely.  Beaulieu v. City of Alabaster, 454 F.3d 1219, 1227

(11th Cir. 2006) (citing Digital Props., 121 F.3d at 589).  It "protects federal courts

from engaging in speculation or wasting their resources through the review of

potential or abstract disputes."  Id. (quoting Digital Props., 121 F.3d at 589); see

also Konikov v. Orange Cty., 410 F.3d 1317, 1322 (11th Cir. 2005) ("The purpose

of this doctrine is to avoid entangling ourselves in abstract disagreements, and also

to shield agencies from judicial interaction until an administrative decision has

been formalized and its effects felt in a concrete way by the challenging parties.")

(alteration and internal quotation marks omitted).  "Courts must

resolve . . . whether the claim is sufficiently mature, and the issues sufficiently

defined and concrete, to permit effective decisionmaking by the court."  Beaulieu,

454 F.3d at 1227 (quoting Digital Props., 121 F.3d at 589).

To determine whether a claim is ripe, a court must evaluate:  (1) "the fitness

of the issues for judicial decision"; and (2) "the hardship to the parties of

withholding court consideration."  Id. (quoting Coal. for the Abolition of

Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1315 (11th Cir.2000)).  In

applying the fitness and hardship prongs, a court must consider the following

factors:  "(1) whether delayed review would cause hardship to the plaintiffs;

(2) whether judicial intervention would inappropriately interfere with further

administrative action; and (3) whether the courts would benefit from further factual

development of the issues presented."  Id. (quoting Ohio Forestry Ass'n, Inc.

v. Sierra Club, 523 U.S. 726, 733 (1998)).[10]

Plaintiff asserts there are no PRTFs in Georgia qualified to treat Plaintiff,

and Defendants refuse to approve Plaintiff's placement in an out-of-state PRTF

that is qualified to treat Plaintiff.  Plaintiff shows the Emerichs have struggled with

Defendants for years to obtain appropriate services for Plaintiff.  (Supp. Emerich

Aff. [38.1] ¶¶ 2-11).  They allege that, in retaliation for their efforts, in 2014, the

State attempted to remove Plaintiff from the Emerich home.  (Id. ¶¶ 12-14).  In

October 2015, a state court judge concluded that "the very agency that placed the

children with the [Emerichs] continually failed to provide services and support to

the overwhelmed parents charged with the care of children suffering grievously

from the abusive environment from which they had been removed."  (Id. ¶ 17).  On

July 6, 2015, Plaintiff's principal provider received a phone call from a State agent

informing the provider that Plaintiff had been denied placement in a PRTF.  In the

---

[10]     A plaintiff is not required to exhaust her administrative remedies before
filing suit under Section 1983.  Beaulieu, 454 F.3d at 1226-27.

months prior to filing this action, Ms. Emerich requested several times that Defendants provide a formal letter denying PRTF placement and determining what, if any, appeal process was available.  (Id. ¶¶ 19-26).  Plaintiff argues, and provides affidavits supporting, that the alternative treatments offered by Defendants are medically inadequate.

Defendants do not dispute that Plaintiff has treatment needs requiring a PRTF level of care.  ([41] at 4).  Defendants, however, argue the evidence does not show the State made or formalized any administrative decision with respect to the relief Plaintiff seeks, and thus court intervention would inappropriately interfere with the State's administrative process.  In support of their ripeness argument, Defendants state that they proposed Plaintiff be placed in Community Based Alternatives for Youth ("CBAY"), which Defendants contend is a PRTF level of care equivalent.  Defendants state further that Plaintiff has not fully availed herself of those services.

Defendants next argue that, because Plaintiff turned six years old in November 2015, in-state PRTF options are now available that are able to serve six-year-olds.  Based on the new options, Plaintiff submitted an application for PRTF re-evaluation.  The application was approved on August 24, 2016, and the Department of Behavioral Health and Developmental Disabilities ("DBHDD")

contacted Georgia PRTFs for potential placement.  Defendants contend two

Georgia PRTFs have programs to treat a six-year-old with Plaintiff's disabilities,

but the PRTFs cannot determine their ability to treat Plaintiff until they evaluate

Plaintiff's individual application.  On September 20, 2016, Defendants notified the

Emerichs of the Georgia PRTFs' position.  On September 21, 2016, the Emerichs

replied to Defendants' letter, stating they had already made Plaintiff's application

to the two Georgia PRTFs identified by Defendants, and that, upon a full

evaluation, neither facility was able to admit Plaintiff.  Defendants assert that the

inability of one PRTF to treat Plaintiff "was not due to any clinical

inability . . . [r]ather, the other female children currently on the unit . . . could

present a safety risk."  ([41] at 4).  Defendants claim they are in the process of

"determining whether all in-state and community resources have been

exhausted . . . and, if so, what further actions—including but not limited to a

referral for out-of-state PRTF services . . .—may be taken with regard to

[Plaintiff]."  (Id.).

Considering the Ohio Forestry factors, the Court concludes this case is ripe

for review.  Delayed review would cause concrete hardship to Plaintiff, because

Plaintiff shows she is harmed "currently on an ongoing basis every day that [she is]

denied essential" services.  Guggenberger, 2016 WL 4098562, at *9.  Plaintiff's

psychiatrist, Dr. Bryon Evans, recommends Plaintiff be "placed into a secured facility specializing in Reactive Attachment Disorder. Since there are no facilities available to appropriately care for [Plaintiff] in the state of Georgia, it is my strong recommendation that admission to an out of state placement be approved immediately for [Plaintiff] to begin treatment." ([38.3] ¶ 9). Dr. Evans states that he is "familiar with the [CBAY] services available in Georgia. The CBAY services available in Georgia would not meet [Plaintiff]'s level of need. As previously stated, [Plaintiff] needs to be placed into a secured facility where the staff are specifically trained in the treatment of reactive attachment disorder and both the treatment model and milieu are focused on Reactive Attachment Disorder." ([38.3] ¶ 10).

Defendants argue that judicial intervention would inappropriately interfere with their further administrative action. The record, however, shows a prolonged period of exchange between Plaintiff and Defendants, during which Plaintiff has not been afforded the PRTF care her doctors claim is necessary. "[P]rotracted inaction by state officials may itself be a wrong, or at least defeat any claim that a federal court should await further state developments." 13B Charles Alan Wright et al., Federal Practice & Procedure § 3532.3 (3d ed. 2016); see also Groome Resources Ltd., LLC v. Parish of Jefferson, 234 F.3d 192, 199-200 (5th Cir. 2000);

Guggenberger, 2016 WL 4098562, at *9.  Defendants do not explain how Plaintiff's change in age alters the underlying fact that, currently, it appears the PRTFs appropriate for Plaintiff in Georgia are unavailable.  Plaintiff has been six for nearly a year, and it does not appear the parties have moved any closer to a resolution, or that the State is any closer to the final determination of the PRTF services that are available and what will be offered to Plaintiff.  Plaintiff turns seven this month, and, under Defendants' reasoning, they may contend that ripeness may be delayed because the State now must determine appropriate PRTF placement for a seven-year-old.  Unless and until Plaintiff receives the PRTF services to which she alleges she is entitled, her legal claims challenging Defendants' failure to provide such services remain viable and unresolved.  See Guggenberger, 2016 WL 4098562, at *9.

> 2.    Preliminary Injunction

Plaintiff seeks a hearing on her Motion for Preliminary Injunction "to determine an appropriate PRTF for" Plaintiff.  ([34.1] at 26).  Plaintiff also requests "such other and further relief as this Court deems equitable and just." (Id.).  Rule 65(d) of the Federal Rules of Civil Procedure requires:

(1) *Contents.*  Every order granting an injunction and every restraining order must:

(A) state the reasons why it issued;

42

(B) state its terms specifically; and

(C) describe in reasonable detail—and not by referring to the
complaint or other document—the act or acts restrained or required.

Fed. R. Civ. P. 65(d).  Plaintiff appears to seek a Court order requiring Plaintiff's

placement in the PRTF at Villa Santa Maria in New Mexico—one of the

out-of-state PRTFs Plaintiff claims is qualified to treat Plaintiff's needs.  Plaintiff

represents that she was accepted into the Villa Santa Maria PRTF on

December 8, 2015, and the PRTF reserved a bed for her until February 6, 2016.

That date has expired, and Plaintiff states that the facility now "need[s] to

reconsider availability."  ([34.1] at 16).  It is unclear what specific injunctive relief

Plaintiff currently seeks and what relief is available.  Even if the Court found

Plaintiff satisfied her burden to show she is entitled to a preliminary injunction, the

Court lacks sufficient information to enable it to state the terms of a preliminary

injunction specifically or describe in reasonable detail the acts required of

Defendants.  See Fed. R. Civ. P. 65(d).  Because Plaintiff's Motion for Preliminary

Injunction does not specify the injunctive relief sought, the motion, at this time, is

denied without prejudice.  Plaintiff is allowed, however, to submit, on or before

November 18, 2016, a renewed Motion for Preliminary Injunction detailing the

specific relief she seeks, and showing that she is entitled to the relief.  Defendants

shall respond to any renewed motion on or before December 2, 2016.  Plaintiff

may file a reply brief on or before December 9, 2016.  If a cognizable renewal

motion is filed, with specific injunctive relief requested, the Court will promptly

conduct a hearing on the preliminary injunctive relief requested.[11]

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Amended

Complaint [28] is **GRANTED IN PART** and **DENIED IN PART**.  Defendants'

Motion is **GRANTED** with respect to Plaintiff's claims against the Individual

Capacity Defendants, including Plaintiff's claims for compensatory damages and

punitive damages.  Defendants' Motion is **DENIED** with respect to Plaintiff's

remaining claims against the Official Capacity Defendants.

**IT IS FURTHER ORDERED** that Defendants Keith Horton, Bobby Cagle,

Carol Christopher, Adrian Owens, Fabienne Michel, Laverne Zephir, and

LeeGayle Harvill are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary

Injunction [34] is **DENIED WITHOUT PREJUDICE**.  Plaintiff may file, on or

before November 18, 2016, a renewed Motion for Preliminary Injunction detailing

---

[11]    The Court is holding December 21, 2016, at 9:30 a.m. as a tentative hearing
date should Plaintiff file a cognizable renewed Motion for Preliminary Injunction.

the specific relief she seeks, and showing that she is entitled to the relief.

Defendants shall respond to any renewed motion on or before December 2, 2016.

Plaintiff may file a reply brief on or before December 9, 2016.

**SO ORDERED** this 7th day of November, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE